1  Dustin C. Hamilton, ABA #1405024
   LeGros Buchanan & Paul
2  4025 Delridge Way SW, Suite 500
   Seattle, Washington 98106
3  Phone:      206-623-4990
   Facsimile: 206-467-4828
4
   Attorneys for Plaintiff
5
              **IN THE UNITED STATES DISTRICT COURT**
6                  **FOR THE DISTRICT OF ALASKA**
7
8  ALASKA LOGISTICS, LLC,

9          Plaintiff,                       Case No.: 3:18-cv-00108-SLG

         v.                                 PLAINTIFF'S OPPOSITION TO
10                                          NEWTOK VILLAGE COUNCIL'S
   NEWTOK VILLAGE COUNCIL and               MOTION TO DISMISS AND MOTION
11 GOLDSTREAM ENGINEERING, INC.             TO STRIKE
12         Defendants.
13
                I.      **RELIEF REQUESTED**
14
          Plaintiff Alaska Logistics, LLC ("Alaska Logistics" or "Plaintiff") requests an
15
   order denying the Motion to Dismiss (ECF No. 18) and Motion to Strike (ECF No. 27)
16
   filed by Defendant Newtok Village Council ("Newtok" or "NVC").  Newtok waived its
17
   tribal sovereign immunity by asserting five counterclaims against Alaska Logistics
18
   arising out of the same transaction and occurrences as Alaska Logistics' initial claims.
19
   By asserting these counterclaims, Newtok consented to suit in the District of Alaska;
20
   Newtok cannot ask the Court to adjudicate its counterclaims while simultaneously
21
   contending the Court lacks jurisdiction over Alaska Logistics' initial claims and
22
   counterclaims to counterclaims.  Alternatively, Alaska Logistics requests an order of
23

LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 1 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 1 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

1   continuance so Alaska Logistics can obtain limited jurisdictional discovery to oppose

2   Newtok's Motion to Dismiss.

3       As for Newtok's Motion to Strike, the Federal Rules of Civil Procedure

4   encompass "counterclaims to counterclaims," and multiple courts have held that

5   counterclaims to counterclaims are acceptable filings under the Federal Rules of Civil

6   Procedure.   Accordingly, Plaintiff's Motion to Dismiss and Motion to Strike must be

7   DENIED.

8                    II.      **STATEMENT OF FACTS**

9       A.    **Newtok Issues IFB for Transportation of Construction Supplies &**
                   **Equipment.**

10

11      Alaska Logistics is a limited liability company which provides, among other

12  services, marine transportation services to remote areas of Alaska.

13      On March 17, 2017, Newtok issued an "Invitation to Bid" ("IFB"), prepared by

14  contractor Goldstream Engineering, Inc. ("Goldstream"), for barge transportation

15  services for the "Mertarvik Road Construction Project."   Complaint ¶ 7.[1]   The IFB

16  consisted of two parts:  (1) transportation of "diverse road construction materials and

17  equipment, including but not limited to corrugated metal pipe (culvert), vehicles, fuel

18  tanks, and various heavy equipment"; and (2) transportation of 25,000 gallons of ultra

19  low sulfur diesel.  Complaint ¶ 8; IFB, Section I.  The freight was to be shipped from

20  Anchorage to Mertarvik with an estimated delivery date of June 1, 2017.  Complaint

21  ¶ 8, ¶ 10.

22

23      [1] A true and correct copy of the IFB is attached as Exhibit A to the Complaint (ECF
    No. 1-1).

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 2 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

1  The IFB instructed bidders to submit separate bid forms for transportation of

2  "[c]onstruction supplies & equipment" and fuel delivery, and stated that bidders "may

3  choose to bid on one or both of NVC's transportation needs."  Complaint ¶ 11; IFB,

4  Section III(2).  The IFB stated that the "Bidder will provide a proposed purchase

5  agreement between NVC and the Bidder with project specific terms and conditions as

6  part of the bid."  Complaint ¶ 13; IFB, Section VI(1).

7  Newtok's IFB included a "Planning Manifest" which set forth estimated

8  shipping weights and dimensions, as well as descriptions of 27 pieces of equipment for

9  the transportation of construction supplies & equipment.  Complaint ¶ 14.  Newtok later

10  issued two addenda which revised various provisions of the IFB, including the Planning

11  Manifest.  Complaint ¶ 15.

12  As amended, the Planning Manifest provided an estimated shipping weight of

13  772,281 lbs. for the construction supplies & equipment.  Complaint ¶ 17.  In addition, as

14  Newtok admits, the vast majority of the cargo set forth in the Planning Manifest, as

15  amended, consisted of "rolling stock" or construction vehicles and freight which could

16  easily be rolled on and off barges with minimal stevedoring.  Complaint ¶ 17; Newtok's

17  Answer ¶ 18 (ECF No. 6).

18
   **B.**     **Alaska Logistics Successfully Bids on Portion of Mertarvik Road**
19            **Construction Project.**

20  On March 31, 2017, Alaska Logistics submitted bids for the construction

21  supplies & equipment transportation and fuel delivery.  Complaint ¶ 20.  Along with the

22  bids, Alaska Logistics submitted an "Alaska Logistics, LLC Transportation Agreement"

23

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 3 of 21

("Transportation Agreement")[2] as required by Section VI(1) of the IFB instructing bidders to provide a "proposed purchase agreement between NVC and the Bidder with project specific terms and conditions"). Complaint ¶ 21.

Article 4.3 of the Transportation Agreement contains a forum selection clause providing that "Any action brought by either party to enforce any term or provision of this contract shall be commenced in the United States District Court for the Western District of Washington at Seattle, as appropriate." Complaint ¶ 23.

Alaska Logistics was the lowest bidder for the transportation of the construction supplies & equipment and received the contract for that portion of the IFB. Complaint ¶ 24. Alaska Logistics did not receive the award for the transportation of the 25,000 gallons of fuel. However, Alaska Logistics later agreed to deliver 10,000 gallons of fuel to Mertarvik outside of the IFB. Complaint ¶ 27.

## C. **Newtok and Goldstream Provide Freight for Transportation That Far Exceeds Scope and Volume of the Parties' Contract.**

After receiving the award for the transportation of the construction supplies & equipment, Newtok and Goldstream's conduct differed in several material respects from the representations set forth in the IFB. Most significantly, the actual freight provided to Alaska Logistics for delivery to Mertarvik differed in nature and volume than the freight described in the IFB. Complaint ¶ 30. For example, the actual cargo that was provided to Alaska Logistics for transportation to Mertarvik was not limited to construction supplies & equipment. The cargo included three 60 ft. modular housing units ("mods") and refrigerated food items which were not set forth in the IFB or

---

[2] A true and correct copy of the Transportation Agreement is attached as Exhibit C to the Complaint (ECF No. 1-3).

{28736-00424800;1}

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 4 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

Addenda. Complaint ¶ 31. In addition, the actual freight was not limited to "rolling stock," resulting in far more stevedoring and requiring significantly more cargo space to transport than the dimensions set forth in the Planning Manifest. Complaint ¶ 32.

**D.** **Newtok Agrees to Change Order But Fails to Pay.**

On May 15, 2017, shortly after receiving the cargo, Alaska Logistics contacted Mark Sherman, president of Goldstream, to advise him that there would be additional charges associated with shipping Newtok and Goldsteam's actual freight. Complaint ¶ 36. On May 18, 2017, after its barges were underway, Alaska Logistics sent a formal change order ("Change Order #1") in the amount of $231,391 to reflect the actual transportation services Alaska Logistics provided. Complaint ¶ 37.[3]

On May 28, 2017, Mr. Sherman sent a letter to Alaska Logistics acknowledging that Alaska Logistics shipped freight out of additional ports of departure that were not included in the original IFB, transported frozen food that was not part of the original IFB, and incurred additional costs loading in Anchorage. Complaint ¶ 38.

On June 1, 2017, Paul Charles, president of Newtok Village Council, sent a letter to Alaska Logistics accepting Change Order #1 in full. Mr. Charles wrote, "The Newtok Village Council is in agreement to pay the extra charges which totals $213,391.00 [sic] per your May 18, 2018 request." Complaint ¶ 39.[4] Despite accepting Change Order #1, Newtok and Goldstream ultimately failed to pay any additional

---

[3] A true and correct copy of Change Order #1 is attached as Exhibit D to the Complaint (ECF No. 1-4).

[4] A true and correct copy of Mr. Charles' June 1, 2017 letter is attached as Exhibit E to the Complaint (ECF No. 1-5).

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 5 of 21

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

compensation for the barge transportation services provided by Alaska Logistics. Complaint ¶ 46.

### E.     Procedural Background.

On April 25, 2018, Alaska Logistics initiated this action and asserted claims against Defendants for breach of contract, breach of good faith and fair dealing, *quantum meruit*, misrepresentation, and violation of Alaska's Unfair Trade Practices Act.  Complaint ¶¶ 47-72.

On June 7, 2018, Newtok filed an answer and asserted counterclaims against Alaska Logistics in lieu of responding to the Complaint by filing a Rule 12(b) motion. (ECF No. 6).  Newtok asserted five counterclaims against Alaska Logistics arising out of the IFB and Alaska Logistics transportation of construction equipment & supplies and 10,000 gallons of fuel.  Those counterclaims included (1) fraud, misrepresentation, and unfair/deceptive practices, (2) breach of contract-fuel, (3) breach of contract-diverted/hostage freight, (4) breach of contract-damage to crusher, and (5) breach of contract-change of POD to Seward.  Newtok's Answer ¶¶ 89-119.

In the counterclaims, Newtok alleged that Alaska Logistics "intentionally underbid the IFB" and then engaged in a "classic 'bait and switch', by invoicing [Newtok] for additional compensation without documentation[.]"  Newtok's Answer ¶ 89, ¶ 93.  Newtok also claimed that "Alaska Logistics held the entire freight shipment hostage in an attempt to coerce [Newtok] into paying the changed rates."  Newtok's Answer ¶ 96.  Newtok also alleged that Alaska Logistics failed to deliver the full 10,000 gallons of fuel, improperly diverted the shipment of "crusher screens" and held them as hostage freight, damaged a "rock crusher" during transport, and forced Newtok to incur

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4900   FAX (206) 467-4828

{28736-00424800;1}

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 6 of 21

additional charges by changing one of the points of departure from Anchorage to Seward. Newtok's Answer ¶¶ 102-119.

On June 27, 2018, Alaska Logistics filed its answer to Newtok's counterclaims. (ECF No. 15).

On July 7, 2018, Newtok filed a Motion to Dismiss Alaska Logistics' claims on the basis that the claims were barred under the doctrine of tribal sovereign immunity. (ECF Nos. 18, 19). Notably, Newtok did <u>not</u> seek to dismiss its own counterclaims against Alaska Logistics, intending to invoke the Court's jurisdiction to adjudicate its counterclaims.

On July 13, 2018, Alaska Logistics filed an Amended Answer to Newtok's Counterclaims and asserted counterclaims to Newtok's counterclaims. (ECF No. 25).

On July 23, 2018, Newtok filed a Motion to Strike Alaska Logistics' counterclaims to counterclaims. (ECF No. 27).

### III.    POINTS AND AUTHORITIES

#### A.    Legal Standard.

Generally, "when a federal court . . . . lacks subject-matter jurisdiction, the court must dismiss the complaint,' *sua sponte* if necessary." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted). By contrast, sovereign immunity is merely "quasi-jurisdictional" in nature, meaning "[i]t may be forfeited where the [sovereign] fails to assert it and therefore may be viewed as an affirmative defense." *Id.* (citation omitted). "In other words, sovereign immunity is not 'jurisdictional in the sense that it must be raised and decided by this Court on its own motion,'" but rather "in the sense that it 'may be asserted at any time.'" *Id.* (citation omitted). Although sovereign

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 7 of 21

immunity is only quasi-jurisdictional in nature, courts have recognized that Rule 12(b)(1) "is still a proper vehicle for invoking sovereign immunity from suit." *Id.*

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The allegations in the complaint are taken as true and all reasonable inferences are drawn in the non-moving party's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (internal quotation marks and citation omitted).

## B. **Newtok Waived Sovereign Immunity By Its Actions in the Litigation.**

"Although the Supreme Court has expressed limited enthusiasm for tribal sovereign immunity, the doctrine is firmly ensconced in our law until Congress chooses to modify it." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) (citing *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 758 (1998) ("There are reasons to doubt the wisdom of perpetuating the doctrine. . . . [I]mmunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victim.")).

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 8 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 8 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

"The immunity, however, is not absolute." *United States v. State of Oregon*, 657 F.2d 1009, 1013 (9th Cir. 1981). Tribal sovereign immunity can be abrogated by authorization of Congress or waiver by the tribe. *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013). A tribe may be found to have "waived sovereign immunity if it **does not invoke its immunity in a timely fashion** and **takes actions indicating consent to the litigation**." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (emphasis added). Thus, a sovereign may waive its immunity by its conduct in litigation. *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1097 (9th Cir. 2017) ("[A] tribe's participation in a lawsuit can 'effect a waiver for limited purposes.'"); *McClendon v. United States*, 885 F.2d 627, 631 n.2 (9th Cir. 1989) ("Indian tribes may, in certain circumstances, consent to suit by participation in litigation."). Some courts have referred to this as the "waiver-by-litigation doctrine." *Tohono O'odham Nation v. Ducey*, 174 F. Supp. 3d 1194, 1204 (D. Ariz. 2016).

For instance, a tribe clearly waives sovereign immunity by filing suit in state or federal court. "Initiation of a lawsuit is an action that 'necessarily establishes consent to the court's adjudication of the merits of that particular controversy' . . . including the risk of being bound by an adverse determination." *In re White*, 139 F.3d 1268, 1271 (9th Cir. 1998); *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1017 (9th Cir. 2016) ("By filing a lawsuit, a tribe may of course 'consent[ ] to the court's jurisdiction to determine the claims brought' and thereby agree to be bound by the court's decision on those claims.").

A tribe can also waive its sovereign immunity by intervening in an action. In *United States v. State of Oregon*, 657 F.2d 1009 (9th Cir.1981), the Ninth Circuit

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 9 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 9 of 21

held that the Yakima Tribe waived its sovereign immunity when it intervened in an action addressing salmon fishing rights on the Columbia River. As the Ninth Circuit explained:

> Here, the Tribe intervened to establish and protect its treaty fishing rights; a basic assumption of that action was that there would be fish to protect. Had the original decree found the species to be in jeopardy, and enjoined all parties from future fishing in order to conserve the species, the Yakimas could not have then claimed immunity from such an action. Otherwise, tribal immunity might be transformed into a rule that tribes may never lose a lawsuit.

*Oregon*, 657 F.2d at 1014. The Ninth Circuit further explained: "By intervening, the Tribe assumed the risk that its position would not be accepted, and that the Tribe itself would be bound by an order it deemed adverse." *Id*. at 1015.

Under these principles, federal courts have held that, by initiating a lawsuit in state or federal court, a tribe also waives its sovereign immunity with regard to counterclaims asserted by a defendant. To be clear, the "bare act of filing suit does not operate as a complete, automatic waiver that subjects a tribe to any counterclaims filed by the defendant." *Quinault*, 868 F.3d at 1097. "The scope of the waiver depends on the particular circumstances, including the tribe's actions and statements as well as the nature and bounds of the dispute that the tribe put before the court." *Id.* The exception to sovereign immunity applies provided "the counterclaim did not 'venture outside the subject of the original cause of action.'" *United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996).

For example, in *Tohono O'odham Nation v. Ducey*, the Tohono O'odham Nation ("Nation") filed suit in federal district court claiming that federal law preempts any state-law authority the Arizona Department of Gaming ("ADG") might have to

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 10 of 21

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

withhold certain certifications for the construction of a casino in the Phoenix metropolitan area. *Tohono O'odham*, 174 F. Supp. 3d at 1196. The ADG Director asserted counterclaims against the Nation for promissory estoppel, fraudulent inducement, and material misrepresentation. *Id.* The Director sought a variety of relief, including declaratory and injunctive relief prohibiting the Nation from conducting gaming activities on the property and rescission of the Gaming Compact between the State of Arizona and the Nation. *Id.*

The Nation moved to dismiss the Director's counterclaims on the basis of tribal sovereign immunity. Citing *United States v. State of Oregon*, 657 F.2d 1009 (9th Cir. 1981), the district court noted that a tribe may waive its sovereign immunity under the waiver-by-litigation doctrine. To determine the scope of the waiver for that particular case, the district court examined the Nation's complaint to evaluate "the issues necessary to decide the action." *Id.* at 1205. The district court held that the Nation's complaint put several questions "squarely at issue" such as the Nation's right to engage in gaming activities on the property and the terms and scope of the Gaming Compact. *Id.* at 1205-06.

After determining the scope of the Nation's waiver, the district court then decided "which of the Director's counterclaims falls within the scope of that waiver." *Id.* at 1206. The district court found that many of the Director's counterclaims mirrored the Nation's claims and "thus implicates only issues necessary" to decide the Nation's claims. *Id.* at 1206-07. The Nation therefore waived its sovereign immunity with regard to the majority of the Directors' counterclaims. *Id.* at 1207. The district court dismissed only a few of the Director's demands, because they "venture outside the

{28736-00424800;1}

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 11 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

subject of the original cause of action," insomuch as the Nation did not seek comparable relief in its complaint. *Id.* (citing *Tsosie*, 92 F.3d at 1043).

Other courts have likewise held that a tribe waived its sovereign immunity after engaging in the same analysis as the *Tohono O'odham* court. *See, e.g.*, *Battle Mountain Band v. United States Bureau of Land Mgmt.*, 3:16-CV-0268-LRH-WGC, 2018 WL 1532153, at *4 (D. Nev. Mar. 28, 2018) (tribe waived its sovereign immunity as to intervenor's cross-claims where tribe's claims involved the "exact issue" raised by the intervenor's cross-claims); *Cayuga Indian Nation of New York v. Seneca Cty., New York*, 260 F. Supp. 3d 290, 299 (W.D.N.Y. 2017) (holding that "mirror-image counterclaims are *not* precluded by sovereign immunity").

Here, Newtok waived its sovereign immunity by asserting counterclaims against Alaska Logistics. After Alaska Logistics filed its complaint, Newtok filed an answer and asserted counterclaims against Alaska Logistics *before* Newtok ever sought to dismiss Alaska Logistics' claims. Newtok's Motion to Dismiss and Motion to Strike only seek to dismiss Alaska Logistics' claims and counterclaims to counterclaims. Newtok did not wait to assert counterclaims against Alaska Logistics until the Court ruled on the sovereign immunity issue. Newtok did not assert counterclaims because it was merely "pleading in the alternative" in the event its Motion to Dismiss was denied. Rather, Newtok affirmatively invoked the Court's jurisdiction to adjudicate its counterclaims. Accordingly, for the purposes of the waiver-by-litigation doctrine, Newtok's counterclaims are the equivalent to a tribe filing suit in the first instance or a tribe intervening in an existing action. Indeed, Alaska Logistics has filed counterclaims to Newtok's counterclaims demonstrating that this case is no different than the more

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 12 of 21

typical waiver-by-litigation case in which a defendant asserts counterclaims to a tribe's claims.

Review of the pleadings demonstrates that Newtok's counterclaims are the mirror image of Alaska Logistics' claims and counterclaims to counterclaims. The claims, counterclaims, and counterclaims to counterclaims all relate to the IFB, Alaska Logistics' transportation of construction supplies & equipment and fuel delivery, and Newtok and Goldstream's compensation for Alaska Logistics' barge transportation services. Newtok has asserted counterclaims for fraud, misrepresentation, unfair and deceptive practices, and breach of contract. Alaska Logistics as asserted claims and counterclaims to counterclaims for the exact same causes of action. Both parties seek money damages. Alaska Logistics seeks additional compensation pursuant to a change order. Complaint ¶¶ 36-39. Newtok characterizes Change Order #1 as a "classic 'bait and switch'" which forms the basis of its fraud, misrepresentation, unfair and deceptive practices counterclaims. Newtok's Answer ¶ 93. Alaska Logistics alleges that Newtok materially misrepresented the scope of the IFB. Complaint ¶ 48. Newtok alleges that Alaska Logistics "intentionally submitted an unusually low bid in order to secure the bid over other responsible bidders." Newtok's Answer ¶ 91.

Thus, Newtok and Alaska Logistics' claims are merely two sides of the same coin—all of the claims relate to the same subject matter. To adjudicate Newtok's counterclaims and Alaska Logistics claims and counterclaims to counterclaims, the Court will clearly need to determine the scope, terms, performance, and payment relating to the IFB, as well as the parties' subsequent negotiations relating to Alaska Logistics' compensation. Alaska Logistics' claims and counterclaims to counterclaims

{28736-00424800;1}

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 13 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

are the mirror image of Newtok's counterclaims. Newtok consented to the Court's jurisdiction by its conduct in the litigation. Accordingly, Newtok waived its sovereign immunity as to Alaska Logistics' claims and counterclaims to counterclaims under the waiver-by-litigation doctrine.

**C.** **Newtok Waived Sovereign Immunity by Agreeing to Forum Selection Clause in the Transportation Agreement.**

In addition, Newtok waived its sovereign immunity pursuant to the forum selection clause in the Transportation Agreement. Section VI(1) of the IFB instructed bidders to provide a "proposed purchase agreement between NVC and the Bidder with project specific terms and conditions"). Complaint ¶ 21. Pursuant to this requirement, Alaska Logistics submitted the Transportation Agreement with its bid which contained a forum selection clause providing that "Any action brought by either party to enforce any term or provision of this contract shall be commenced in the United States District Court for the Western District of Washington at Seattle, as appropriate." Complaint ¶ 23.

A tribe can waive its sovereign immunity "by agreeing to contract terms inconsistent with sovereign immunity." *Nenana Fuel Co., Inc. v. Native Vill. of Venetie*, 834 P.2d 1229, 1232 (Alaska 1992); *see also Native Vill. of Eyak v. GC Contractors*, 658 P.2d 756, 760 (Alaska 1983). For example, in *Nenana Fuel v. Native Village of Venetie*, the Alaska Supreme Court held that a tribe waived sovereign immunity by entering into a note and security agreement that contained a "remedies" provision which allowed the lender to "bring an action upon the Note" and "invoke any other remedy provided by law or this agreement." *Nenana Fuel*, 834 P.2d at 1234. The

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 14 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

Alaska Supreme Court held that this remedies provision constituted an express waiver of sovereign immunity by "referring actions based upon the contract to Alaska courts for application of Alaska law." *Id.* at 1233. Likewise, in *Hydaburg Co-op Ass'n of Hydaburg v. Hydaburg Fisheries*, the Alaska Supreme Court held that a tribe waived sovereign immunity by entering into an agreement containing an arbitration clause, because an arbitration clause "would be meaningless if it did not constitute a waiver of the tribe's immunity from suit to compel arbitration or to enforce an arbitration award." 826 P.2d 751, 755 (Alaska 1992).

Here, per Newtok's instructions, Alaska Logistics submitted the Transportation Agreement with its bid and was awarded the contract. Newtok never objected to the Transportation Agreement or the forum selection clause contained therein. Alaska Logistics then performed the contract in accordance with the terms of the IFB and Transportation Agreement. By consenting to the Transportation Agreement, Newtok waived its sovereign immunity by "agreeing to contract terms inconsistent with sovereign immunity." The forum selection clause is fundamentally inconsistent with Newtok's assertion that it is immune from suit in state or federal court for disputes relating to the IFB and Alaska Logistics' barge transportation services. Accordingly, Newtok's consent to the Transportation Agreement operates as a waiver of its sovereign immunity.

### D. In the Alternative, Alaska Logistics Should Be Entitled to Take Jurisdictional Discovery on Sovereign Immunity Issue.

In the event the Court finds that Newtok did not waive its sovereign immunity, Alaska Logistics requests that the Court defer ruling on this issue so Alaska Logistics

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 15 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 15 of 21

can pursue limited jurisdictional discovery on whether Alaska Logistics contractually waived its sovereign immunity in another agreement relating to the Mertarvik Construction Project.

As Newtok admits, it has made both a facial and factual challenge to the Court's jurisdiction. Motion to Dismiss at 5. When jurisdiction is "factually attacked in a Rule 12(b)(1) motion, the court may hear evidence before ruling on the issue." *HRPT Properties Tr. v. Lingle*, 676 F. Supp. 2d 1036, 1041 (D. Haw. 2009) (citing *St. Clair v. City of Chico,* 880 F.2d 199, 200–202 (9th Cir. 1989)). "The court may permit discovery before allowing the plaintiff to demonstrate the requisite jurisdictional facts." *Id.*; *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015) ("District courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists."); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D. 633, 641 (S.D. Cal. 2014) ("Generally, where 'pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed.'"); *Wyatt v. Syrian Arab Republic*, 225 F.R.D. 1, 3 (D.D.C. 2004) (court "must give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction'" where foreign sovereign claims it is immune from suit).

Alaska Logistics' barge transportation services is only a small part of the Mertarvik Construction Project. Newtok's relocation effort has spanned for over a decade and has involved dozens of state and federal agencies as well as numerous private contractors. Affidavit of Dustin C. Hamilton ("Hamilton Aff.") ¶¶ 2-3, Exs. A-B. As a part of the Mertarvik Construction Project, Newtok has routinely waived its

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 16 of 21

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

sovereign immunity, by contract, to qualify for government grants or enter into agreements with various contractors. For example, Newtok and Goldstream's "Professional Planning, Engineering Construction Management Services Agreement," which was signed by NVC President Paul Charles, provides that the "Council hereby waives the Council's right to assert the defense of sovereign immunity with respect to any suit brought by Goldstream with respect to the enforcement of this Agreement in accordance with its terms . . . ." Hamilton Aff. ¶ 4, Ex. C. Likewise, Newtok and DOWL Engineering's "Contract to Construct Mertarvik Evacuation Center," which was also signed by NVC President Paul Charles, includes a limited waiver of sovereign immunity. Hamilton Aff. ¶ 5, Ex. D.

Alaska Logistics has only been able to acquire a small number of these records from Alaska state agencies via Alaska's Public Records Act. Alaska Logistics has a reasonable basis to believe that Newtok has waived its sovereign immunity in other contracts or grant applications with government agencies and private contractors, and that some of those waivers may extend to Alaska Logistics claims and counterclaims to counterclaims. To this end, the U.S. Bureau of Indian Affairs has indicated that it possesses over 13,650 pages of documents relating to the Mertarvik relocation project from the years 2010-2017, which was cost-prohibitive to obtain. Hamilton Aff. ¶ 6, Ex. E. All of these documents are within Newtok's possession, custody, or control. Newtok can more easily identify the documents relating to sovereign immunity than a state or federal agency, and Newtok's witnesses can testify about issues pertaining to the tribe's waiver of sovereign immunity. Furthermore, Newtok's contracts with private contractors may not be in the possession of a government agency. Accordingly,

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 17 of 21

to the extent the Court finds that Newtok has not already waived its sovereign immunity, Alaska Logistics requests that the Court defer its ruling on Newtok's Rule 12(b)(1) motion so Alaska Logistics can conduct limited jurisdictional discovery on whether Newtok waived its sovereign immunity (to the extent the Court finds that Newtok has not already waived it).

### E. Counterclaims to Counterclaims Are Recognized Pleadings Under the Federal Rules of Civil Procedure.

Finally, Newtok's Motion to Strike lacks merit and should be denied. Rule 15(a)(1) provides that a party "may amend its pleading once as a matter of course within . . . 21 days after serving it[.]" Alaska Logistics filed its Amended Answer and Counterclaims to Counterclaims (ECF No. 25) on July 13, 2018—fourteen days after it filed its original Answer to Newtok's Counterclaims (ECF No. 15). Accordingly, Alaska Logistics was entitled to file the Amended Answer as a "matter of course" and did not require Newtok's consent or leave of court to file the amended pleading.

As for Newtok's contention that a counterclaim to a counterclaim is not "allowed under the Rules," Motion to Strike at 1-2, the weight of authority supports the opposite conclusion. "Most courts that have addressed this issue have concluded that a counterclaim may be asserted in a reply to a counterclaim." *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, CV-06-2141-PHX-DGC, 2007 WL 1521585, at *1–2 (D. Ariz. May 22, 2007) (citing *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, No. 05-CV-73615-DT, 2007 WL 1218701, at *1-3 (E.D. Mich. Apr. 20, 2007); *United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, No. 00 Civ. 3367(AGS), 2003 WL 223462, at *3 (S.D.N.Y. Feb. 3, 2003); *Electroglas, Inc. v. Dynatex Corp.*, 473 F. Supp.

Le Gros Buchanan & Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 18 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 18 of 21

1167, 1171 (N.D . Cal. 1979); *S.E. Indus. Tire Co. v. Duraprene Corp.,* 70 F.R.D. 585, 586 (E.D. Pa. 1976); *Evans v. S.S. Kresge Co.,* 54 F.R.D. 536, 539 (W.D. Pa. 1972); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,* 50 F.R.D. 415, 418 (D. Del. 1970); *Warren v. Indian Refining Co.,* 30 F.Supp. 281, 282 (N.D. Ind. 1939)); *see also Lincoln Sav. Bank v. Open Sols., Inc.*, 956 F. Supp. 2d 1032, 1038–39 (N.D. Iowa 2013) ("[S]everal courts have recognized a counterclaim to a counterclaim as a valid pleading."); *Baker v. Borg Warner Morse Tec, Inc.*, CIV.A. 3:11-505, 2012 WL 195011, at *1-2 (S.D.W. Va. Jan. 23, 2012) ("There are several courts which have considered the issue and most 'have concluded that a counterclaim may be asserted in a reply to a counterclaim.'").

The district court's decision in *Power Tools & Supply* is instructive. There, the district court reasoned as follows:

> "Pleading" is defined by Rule 7(a), which permits several types of pleadings. Included amongst the permissible pleadings is "a reply to a counterclaim denominated as such." Fed.R.Civ.P. 7(a). In other words, by the plain language of the rules, a counterclaim may be raised in a pleading, and a reply to a counterclaim is a permissible pleading; hence, a counterclaim may be asserted in a reply to a counterclaim.

2007 WL 1218701 at *2 (citing *S.E. Indus. Tire Co.,* 70 F.R.D. at 586).

Lastly, Newtok fails to provide a basis upon which it would be entitled to fees or costs for preparing its Motion to Strike. "It is well established under the American Rule that a party may not generally recover attorney's fees absent statutory authorization or a contract providing for an award." *Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor v. Robertson*, 625 F.2d 873, 876 (9th Cir. 1980). Newtok cites no rule, statute or other authority entitling it to recover fees or costs.

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

{28758-00424800/.1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 19 of 21
Case 3:18-cv-00108-SLG   Document 29   Filed 07/27/18   Page 19 of 21

1   Newtok is not entitled to fees or costs simply because it (wrongly) deems a pleading or

2   argument to be "frivolous."  Motion to Strike at 2-3.

3                    IV.    **CONCLUSION**

4          For all the above reasons, Defendant Newtok Village Council's Motion to

5   Dismiss and Motion to Strike should be DENIED.

6          Dated this 27th day of July, 2018.

7                                    LE GROS, BUCHANAN & PAUL

8                                    By: _s/Dustin C. Hamilton_
                                     Dustin C. Hamilton, ABA #1405024

9
                                     Attorney for Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 20 of 21

# CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Court, and serve it on all associated counsel.

I certify under penalty of perjury under the laws of the United States and State of Washington that the foregoing is true and correct.

<u>*s/Stephanie Gurney*</u>
Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106
Telephone: 206-623-4990
Facsimile: 206-467-4828
Email: sgurney@legros.com

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990 FAX (206) 467-4828

{28736-00424800;1}
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND
MOTION TO STRIKE
(No. 3:18-cv-00108-SLG) – Page 21 of 21