# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ALASKA LOGISTICS, LLC,

                    Plaintiff,

         v.

NEWTOK VILLAGE COUNCIL and
GOLDSTREAM ENGINEERING,
INC.,

                    Defendants.

Case No. 3:18-cv-00108-SLG

## ORDER RE MOTION TO DISMISS AND MOTION TO STRIKE

Before the Court at Docket 18 is Defendant Newtok Village Council's Motion

to Dismiss.  Also before the Court at Docket 27 is Newtok's Motion to Strike Answer

to Counterclaim.  Plaintiff Alaska Logistics, LLC opposed both motions at Docket

29.  Newtok replied at Docket 31.  Oral argument was held on September 26, 2018

at Anchorage, Alaska before Judge Sharon L. Gleason.[1]

## BACKGROUND

Alaska Logistics, LLC ("Alaska Logistics") is a limited liability company

based in Seattle, Washington.[2]  Newtok Village Council ("Newtok") is the governing

body of Newtok Village, a federally recognized Indian tribe located in Newtok,

Alaska.[3]

---

[1] Docket 38 (Minute Entry).

[2] Docket 1 (Compl.) at 1, ¶ 1; Docket 6 at 1, ¶ 1.

[3] Docket 1 at 1, ¶ 2; Docket 6 at 1, ¶ 2.

Alaska Logistics' Complaint alleges as follows:

On March 17, 2017, Newtok issued an Invitation to Bid ("IFB") prepared by contractor Goldstream Engineering, Inc. ("Goldstream").[4] The IFB stated that Newtok was "accepting bids from Interested Bidders to provide barge services from the Port of Anchorage to Mertarvik, AK . . . on Nelson Island near Newtok, Alaska. Barge services require transport of 25,000 gallons of ultra low sulfur diesel (ULSD) and diverse road construction materials and equipment, including but not limited to corrugated metal pipe (culvert), vehicles, fuel tanks, and various heavy equipment."[5] A planning manifest with estimated shipping weights and dimensions of the construction supplies and equipment was appended to the IFB.[6] The IFB specified the Port of Anchorage as the "project Point of Departure," and identified June 1, 2017 as the estimated delivery date to Mertarvik.[7] It further stated that "Bidders may choose to bid on one or both of [Newtok's] transportation needs," and instructed bidders to submit separate bid forms for "25,000 gallons of ULSD fuel delivery" and "Construction supplies & equipment."[8] The IFB also instructed

---

[4] Docket 1 at 2, ¶ 7; *see* Docket 1-1 (IFB) at 2.

[5] Docket 1-1 at 5.

[6] Docket 1-1 at 17.

[7] Docket 1-1 at 6, 7.

[8] Docket 1-1 at 6.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 2 of 24

bidders to "provide a proposed purchase agreement between [Newtok] and the Bidder with project specific terms and conditions as part of the bid."[9]

In late March, Newtok issued addenda to the IFB.[10]  The addenda included estimated dimensions and weight for the construction materials and equipment cargo.[11]  Alaska Logistics alleges that "[t]he vast majority of the cargo set forth in the Planning Manifest, as amended, consisted of 'rolling stock' or construction vehicles and freight which could easily be rolled on and off barges with minimal stevedoring."[12]

On March 31, 2017, Alaska Logistics submitted its bids to Newtok.[13]  Alaska Logistics included an unsigned proposed "Alaska Logistics, LLC Transportation Agreement" ("Transportation Agreement") with its bid.[14]  The proposed Transportation Agreement included a forum selection clause, which provided as follows:

> Any action brought by either party to enforce any term or provision of this contract shall be commenced in the United States District Court for the Western District of Washington at Seattle, as appropriate.  The parties submit to the exclusive personal jurisdiction of the United States District Court located in Seattle, Washington with respect to any litigation arising out of this agreement, with the substantially prevailing party entitled to receive its reasonable legal fees and costs.

---

[9] Docket 1-1 at 8.

[10] Docket 1-2 (Addenda to IFB) at 2, 5.

[11] Docket 1-2 at 4.

[12] Docket 1 at 4, ¶ 18.

[13] Docket 1-3 (Bid Proposals) at 9.

[14] Docket 1-3 at 10–13.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 3 of 24

Shipper hereby submits to the jurisdiction of the courts of the United States Court for the Western District of Washington at Seattle and consents to service fo process by certified mail, return receipt requested, addressed in accordance with this contract.[15]

The final page of the proposed agreement included unsigned signature lines, which identified "Goldstream Engineering for [Newtok Village Council]" as the "Shipper."[16]

On April 16, 2017, Goldstream informed Alaska Logistics that it was the apparent low bidder for the transportation of the construction supplies and equipment.[17] After receiving notice of the bid award, "Alaska Logistics repeatedly asked Goldstream for an actual shipping manifest." However, Goldstream did not provide a shipping manifest until May 11, 2017.[18] Alaska Logistics alleges that this delay "seriously impaired Alaska Logistics' ability to plan for and arrange the appropriate labor, shipping containers or flats, and other items necessary to load the cargo."[19]

On or shortly before May 15, 2017, Alaska Logistics received the cargo to be transported to Mertarvik.[20] Alaska Logistics contends that this cargo "materially

---

[15] Docket 1-3 at 11, ¶ 4.3.

[16] Docket 1-3 at 13.

[17] Docket 1 at 5, ¶ 24. While Alaska Logistics did not receive the award for the transportation of the 25,000 gallons of fuel, it later agreed to deliver 10,000 gallons of fuel to Mertarvik outside of the contract. Docket 1 at 5, ¶ 27.

[18] Docket 1 at 5, ¶ 28.

[19] Docket 1 at 5–6, ¶ 28.

[20] Docket 1 at 7, ¶ 36.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 4 of 24

differed from the representations set forth in the IFB and Addenda in several respects."[21]  First, the cargo provided for transport included modular housing units and refrigerated food items in addition to construction supplies and equipment. Second, this additional cargo required considerably more space to transport than had previously been indicated and did not consist of "rolling stock."  Third, the cargo was not ready for shipment when it was provided to Alaska Logistics.  Fourth, Alaska Logistics was asked to make separate deliveries originating from Seward, Alaska and Seattle, Washington, neither of which were points of departure identified in the IFB or the bids.[22]  In light of these issues, Alaska Logistics contacted Goldstream president Mark Sherman on May 15 and advised him that there would be additional costs associated with shipping the freight.[23]  On May 18 — after the barges were underway — Alaska Logistics sent a formal change order request for $231,391.[24]  Goldstream offered $65,000 in response to the change order request, which Alaska Logistics rejected.[25]  On June 1, Newtok president Paul Charles sent a letter to Alaska Logistics stating that "[t]he Newtok Village

---

[21] Docket 1 at 6, ¶ 30.

[22] Docket 1 at 6–7, ¶¶ 31–34.

[23] Docket 1 at 7, ¶ 36.

[24] Docket 1-4 (Change Order) at 5.

[25] Docket 1 at 7–8, ¶ 38.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 5 of 24

Council is in agreement to pay the extra charges which total[] $213,391.00 per your May 18, 2017 request."[26]

Meanwhile, while corresponding with Mr. Sherman and Mr. Charles, Alaska Logistics transported the cargo to Mertarvik.[27] Alaska Logistics alleges that issues with the cargo "forced [the company] to expend significantly more time and labor unloading the cargo."[28] It further contends that Newtok and Goldstream were not capable of receiving 10,000 gallons of fuel that Alaska Logistics had transported, which forced Alaska Logistics to leave its fuel tanks at Mertarvik.[29]

On June 19, 2017, Alaska Logistics sent a second change order request for an additional $9,755.[30] On June 29, Mr. Charles sent a letter to Alaska Logistics requesting additional documentation supporting its change orders.[31] The letter also stated that Newtok "acknowledges that additional freight costs have been incurred by Alaska Logistics . . . and we are in agreement to pay the extra charges."[32] Alaska Logistics provided Newtok with additional documentation to support its change orders on September 28.[33] However, Alaska Logistics alleges

---

[26] Docket 1-5 (June 1, 2017 Paul Charles Letter) at 2.

[27] Docket 1 at 8, ¶ 40.

[28] Docket 1 at 8, ¶ 41.

[29] Docket 1 at 8, ¶ 42.

[30] Docket 1 at 8–9, ¶ 43.

[31] Docket 1-6 (June 29, 2017 Paul Charles Letter) at 2.

[32] Docket 1-6 (June 29, 2017 Paul Charles Letter) at 2; *see* Docket 1 at 9, ¶ 44.

[33] Docket 1 at 9, ¶ 45.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 6 of 24

that Newtok and Goldstream have not "provide[d] any additional compensation for the barge transportation services Alaska Logistics provided to [Newtok] and Goldstream."[34]

Alaska Logistics filed a Complaint against both Newtok and Goldstream on April 25, 2018.[35] The Complaint alleges six causes of action: (1) breach of contact against Newtok and Goldstream; (2) breach of good faith and fair dealing against Newtok and Goldstream; (3) *quantum meruit* against Newtok and Goldstream; (4) misrepresentation against Newtok; (5) misrepresentation against Goldstream; and (6) unfair trade practices against Newtok and Goldstream.[36] Newtok filed an Answer and Counterclaims on June 7, 2018. Newtok alleged five counterclaims: one claim for fraud, misrepresentation, and unfair and deceptive practices, and four claims for breach of contract.[37] Newtok filed the instant Motion to Dismiss on July 6, 2018.[38]

On July 13, 2018, Alaska Logistics filed an "Amended Answer to Newtok's Counterclaims and Plaintiff's Counterclaims to Counterclaims."[39] The Amended Answer alleges six counterclaims, which are identical to the causes of action

---

[34] Docket 1 at 9, ¶ 46.

[35] Docket 1 at 13.

[36] Docket 1 at 9–13, ¶¶ 47–72.

[37] Docket 6 at 10–14, ¶¶ 89–119.

[38] Docket 18.

[39] Docket 25 at 1, 18.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 7 of 24

alleged in Alaska Logistics' initial Complaint.  It also restates factual allegations from the Complaint.[40]  Newtok filed the instant Motion to Strike Counterclaims to Counterclaims on July 23, 2018.[41]

**LEGAL STANDARD**

## I.  Jurisdiction and Applicable Law

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[42]  The Court also has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 as Alaska Logistics alleges the breach of a maritime contract.[43]

## II.  Standard for Dismissal

A defendant may seek dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  When such a motion is made, the plaintiff has the burden of proving jurisdiction.[44]  If the defendant raises a factual challenge to a court's jurisdiction, as opposed to a facial challenge based solely on the allegations in the complaint, a court may consider matters

---

[40] Docket 25 at 4–16, ¶¶ 1–72.

[41] Docket 27.

[42] Docket 1 at 2, ¶ 4.  Alaska Logistics is a citizen of Washington; Newtok and Goldstream are citizens of Alaska.  Docket 1 at 1, ¶¶ 1–3.

[43] Docket 1 at 2, ¶ 5.

[44] *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 8 of 24

outside the pleadings in ruling on the motion.[45] Here, the record contains some

additional materials.[46] "[N]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims."[47]

The issue of tribal sovereign immunity is "quasi-jurisdictional" in the sense

that it "may be asserted at any time."[48] "Although sovereign immunity is only quasi-

jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign

immunity from suit."[49] "In the context of a Rule 12(b)(1) motion to dismiss on the

basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction

has the burden of proving its existence,' i.e. that immunity does not bar the suit."[50]

A court may "'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes

where necessary'" when determining such a motion.[51]

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or

---

[45] *See Roberts v. Corrothers*, 812 F.2d 1173, 1177–78 (9th Cir. 1987); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

[46] *See* Docket 30 (Hamilton Aff.); Docket 30-1 (Planning Group Timeline, Planning Group Participants, Goldstream Agreement, DOWL Agreement, BIA Letter).

[47] *Kingman Reef*, 541 F.3d at 1195 (quoting *Corrothers*, 812 F.2d at 1177).

[48] *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (quoting *Mitchell v. Franchise Tax Board (In re Mitchell)*, 209 F.3d 1111, 1117 (9th Cir. 2000), *abrogated on other grounds as recognized by Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 853 n.6 (9th Cir. 2001)).

[49] *Pistor*, 791 F.3d at 1111.

[50] *Id.* (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)).

[51] *Id.* (alteration in original) (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 9 of 24

scandalous matter."  The function of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[52]  "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."[53]  "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief."[54]  "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike."[55]

In its opposition to the motion to dismiss, Alaska Logistics also seeks jurisdictional discovery.[56]  Courts are afforded broad discretion in allowing discovery when "pertinent facts bearing on the question of jurisdiction are in dispute."[57]  "[I]t is clear that a court may allow discovery to aid in determining

---

[52] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

[53] *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

[54] *Alco Pac.*, 217 F. Supp. 2d at 1033 (citing *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998)).

[55] *Id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

[56] Docket 29 at 15–18.

[57] *Am. West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (citations omitted).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 10 of 24

whether it has . . . subject matter jurisdiction."[58]   However, a court may deny

jurisdictional discovery if a discovery request is "based on little more than a hunch

that it might yield jurisdictionally relevant facts."[59]

## DISCUSSION

### 1.  Tribal Sovereign Immunity Protects Newtok From Suit.

Newtok contends that the Court should dismiss Alaska Logistics' claims

against Newtok because the claims are barred by Newtok's tribal sovereign

immunity.[60]  Alaska Logistics responds that Newtok has waived its immunity from

suit.[61]

"Indian tribes have long been recognized as possessing the common-law

immunity from suit traditionally enjoyed by sovereign powers."[62]   This tribal

immunity extends to tribal governing bodies.[63]   Suits against Indian tribes are

barred by sovereign immunity "absent a clear waiver . . . or congressional

abrogation."[64]  "There is a strong presumption against waiver of tribal sovereign

---

[58] *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

[59] *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

[60] Docket 19 at 1.

[61] Docket 29 at 12, 14; *see* Docket 1 at 5, ¶ 26.

[62] *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

[63] *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).

[64] *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 11 of 24

immunity."[65]  Waiver of sovereign immunity may not be implied and must be expressed unequivocally.[66]

### A.    Litigation Activity

Alaska Logistics first contends that "Newtok waived its immunity by asserting counterclaims against Alaska Logistics."[67]  It notes that a tribe may waive its immunity by "tak[ing] actions indicating consent to the litigation," and that "participation in a lawsuit can 'effect a waiver for limited purposes.'"[68]

Alaska Logistics contends that courts have held that conduct similar to Newtok's litigation activity constitutes a limited waiver of sovereign immunity. Alaska Logistics first notes that when a tribe files suit in state or federal court, it waives sovereign immunity as to its own claims.[69]  Alaska Logistics further contends that "federal courts have held that, by initiating a lawsuit in state or federal court, a tribe also waives its sovereign immunity with regard to counterclaims asserted by a defendant."[70]  It cites several cases to support this proposition.  In

---

[65] *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001).

[66] *See Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (citing *McClendon v. United States*, 885 F.2d 627, 629 (9th Cir. 1989)).

[67] Docket 29 at 12.

[68] Docket 29 at 9 (quoting *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1097 (9th Cir. 2017)); *see Tohono O'odham Nation v. Ducey*, 174 F. Supp. 3d 1194, 1204 (D. Ariz. 2016) (referring to these rules as the "waiver-by-litigation doctrine").

[69] Docket 29 at 9 (citing *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1017 (9th Cir. 2016); *In re White*, 139 F.3d 1268, 1271 (9th Cir. 1998)).

[70] Docket 29 at 10.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 12 of 24

*Quinault Indian Nation v. Pearson for Estate of Comenout*, a tribe brought an action against several tribal members.[71] After one member's death, his estate asserted counterclaims.[72] The Ninth Circuit concluded that "claims arising out of the same transaction or occurrence and sounding in recoupment can be sustained as counterclaims against a tribe" without violating the tribe's sovereign immunity.[73] In *Tohono O'odham Nation v. Ducey*, a tribe filed suit in federal district court, and the director of the Arizona Department of Gaming asserted several counterclaims.[74] The court concluded that the tribe had waived its sovereign immunity with respect to those counterclaims that did not "venture outside the subject of the original cause of action."[75] Alaska Logistics next cites *Battle Mountain Band v. United States Bureau of Land Management* and *Cayuga Indian Nation of New York v. Seneca County.*[76] In *Battle Mountain Band*, a court held that a tribe waived its sovereign immunity as to an intervenor's cross-claims that involved the "exact issue" raised by the tribe's claims.[77] And in *Cayuga Indian Nation*, a court held

---

[71] 868 F.3d 1093, 1096 (9th Cir. 2017).

[72] *Id.*

[73] *Id.* at 1099–1100. A recoupment claim "must (1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim." *United States v. Washington*, 853 F.3d 946, 968 (9th Cir. 2017) (citation omitted).

[74] 174 F. Supp. 3d 1194, 1197 (D. Ariz. 2016).

[75] *Id.* at 1207 (quoting *United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996)).

[76] Docket 29 at 12.

[77] No. 3:16-CV-0268-LRH-WGC, 2018 WL 1532153, at *4 (D. Nev. Mar. 28, 2018).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 13 of 24

that "mirror-image counterclaims are *not* precluded by sovereign immunity."[78]

Alaska Logistics also cites *United States v. Oregon*, in which the Ninth Circuit concluded that the Yakima tribe had waived its sovereign immunity though its litigation activity.[79] The United States had initiated an action to apportion a fishery, and the Yakima Tribe had intervened. The parties reached an agreement that provided for continuing jurisdiction in the district court. The State of Washington later intervened, asking the district court to enjoin the tribe's fishing. The *Oregon* court concluded that such an injunction would not be barred by the tribe's sovereign immunity.[80] The Circuit Court analogized the underlying suit to an equitable in rem action, and concluded that the district court could enjoin any interference with the fishery.[81] Accordingly, by intervening in this equitable action and expressly agreeing to submit later-arising issues to federal court, the tribe "assumed the risk that any equitable judgment secured could be modified if warranted by changed circumstances" and "that [it] would be bound by an order it deemed adverse."[82]

The cases cited by Alaska Logistics indicate that a tribe may effect a limited waiver of sovereign immunity through its litigation activity. None of these cases,

---

[78] 260 F. Supp. 3d 290, 299 (W.D.N.Y. 2017) (emphasis in original).

[79] *United States v. Oregon*, 657 F.2d 1009, 1011 (9th Cir. 1981).

[80] *Id.* at 1011–12.

[81] *Id.* at 1015–16.

[82] *Id.* at 1015.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 14 of 24

however, addresses whether a tribe waives its sovereign immunity as to an opposing party's claims when the tribe files counterclaims in response to those claims. *Quinault*, *Tohono O'odham*, *Battle Mountain Band*, and *Cayuga* all address situations in which a tribe asserted that tribal sovereign immunity barred an opposing party's counterclaims; in each of these cases, it was the tribe that initiated the litigation. *Tohono O'odham*, *Battle Mountain Band*, and *Cayuga* suggest only that a tribe's filing of a lawsuit "can constitute a limited waiver with respect to issues the [tribe] itself has put at issue."[83] The Ninth Circuit's holding in *Quinault* does not support even that limited proposition; the Circuit Court held that the Quinault Indian Nation did not waive its immunity even as to a counterclaim that did not "go beyond the contours of the Nation's suit," reasoning that the tribe "did not consent to any counterclaims."[84] The *Quinault* court did state that "counterclaims to recoup damages arising from the same transaction or occurrence as a tribe's claims do not violate the tribe's sovereign immunity."[85] However, Alaska Logistics' claims do not sound in recoupment; Alaska Logistics seeks "[d]amages in an amount exceeding $231,391," which would constitute "affirmative relief" from Newtok rather than "an offset to [Newtok's] requested

---

[83] *Tohono O'odham Nation v. Ducey*, 174 F. Supp. 3d 1194, 1204 (D. Ariz. 2016).

[84] *Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1098 (9th Cir. 2017); *see also id.* ("The Estate could assert affirmative defenses against the Nation's claims, but it could not bring counterclaims absent waiver of sovereign immunity.").

[85] *Id.* at 1099.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 15 of 24

relief."[86]

In *Oregon*, the Ninth Circuit concluded that a tribe waived its sovereign immunity where, as here, the tribe elected to participate in litigation that it did not initiate. After intervening in the initial litigation, however, the tribe in *Oregon* "entered an agreement expressing its unequivocal consent to submit issues to federal court."[87] Newtok has not entered into such an agreement; moreover, it has asserted its sovereign immunity defense throughout this litigation.[88] Furthermore, the Ninth Circuit has expressed reluctance to apply the *Oregon* court's reasoning in distinguishable contexts; subsequent cases have characterized *Oregon* as "test[ing] the outer limits of [the Supreme Court']s admonition against implied waivers."[89] Accordingly, the authorities Alaska Logistics cites do not establish that Newtok waived its tribal sovereign immunity as to the claims Alaska Logistics has asserted against it by asserting counterclaims against Alaska Logistics.

The Court has found few other cases addressing tribal sovereign immunity and the effect of litigation conduct analogous to that at issue here.[90] However,

---

[86] *Id.* at 1100; *see* Docket 1 at 13, ¶ 1.

[87] *Id.* at 1099 (distinguishing *Oregon* partly on this basis).

[88] *See* Docket 6 at 14.

[89] *Quinault*, 868 F.3d at 1099 (second alteration in original) (quoting *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 (9th Cir. 1989)).

[90] *Cf. Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224 (8th Cir. 2008). In *C & W Enterprises*, the Eighth Circuit concluded that a tribe waived its sovereign immunity when it did not object to a company's arbitration demand, and instead "rais[ed] its own arbitral counterclaims under the same contract." *Id.* at 231. However, the court noted that the tribe had explicitly acknowledged the potential limitation on the arbitrator's authority but declined to object "for the sake of expediency in resolving the dispute on its merits." *Id.* Furthermore, the

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 16 of 24

several courts have addressed whether similar conduct constitutes a waiver of *state* sovereign immunity. In *Mescalero Tribe v. State of New Mexico*, a tribe filed an action against the state of New Mexico; the state responded by filing an answer and counterclaim while also "argu[ing] that it had Tenth and Eleventh Amendment immunity."[91] The Tenth Circuit considered whether the state had waived its Eleventh Amendment immunity by filing a counterclaim, and concluded that it had not. The court acknowledged that a state may waive its Eleventh Amendment immunity, but noted that such waiver must be "unequivocal."[92] It then concluded that the state's continued assertion of its Eleventh Amendment immunity was "hardly consistent with the kind of unequivocal waiver necessary to waive that immunity."[93] Other courts have reached similar conclusions.[94]

The Court is unaware of any Ninth Circuit case that has held that a tribe waives its sovereign immunity as to the claims in an opposing party's complaint by asserting counterclaims. Furthermore, any waiver of tribal sovereign immunity "must be unequivocal and may not be implied."[95] Here, Newtok's counterclaims

---

arbitration at issue in *C & W Enterprises* also addressed three additional contracts, all of which included explicit immunity waivers. *Id.*

[91] *Mescalero Apache Tribe v. State of N.M.*, 131 F.3d 1379, 1381 (10th Cir. 1997).

[92] *Id.* at 1384 n.4.

[93] *Id.*

[94] *See United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir. 2009) ("A state may even file a counterclaim and third party complaint at the same time it asserts sovereign immunity without waiving the defense."); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365–66 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (1999).

[95] *See Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (citing *McClendon v. United*

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 17 of 24

were accompanied by its assertion that Alaska Logistics' claims were barred by sovereign immunity.[96]  In the absence of controlling precedent, the Court finds the *Mescalero Tribe* court's reasoning persuasive.[97]  Accordingly, Newtok has not waived its sovereign immunity through its litigation activity.

## B.    Forum Selection Clause

Alaska Logistics next contends that Newtok waived its immunity by agreeing to the forum selection clause in the proposed Transportation Agreement.[98]  No United States Supreme Court opinion or published Ninth Circuit opinion has addressed whether a forum selection clause constitutes a waiver of a tribe's sovereign immunity.  In *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court held that a tribe waived its sovereign immunity by consenting to arbitration and to the enforcement of arbitral awards in Oklahoma state court.[99]  The *C & L Enterprises, Inc.* court rejected the tribe's contention "that an arbitration clause simply 'is not a waiver of immunity from suit'":

> The clause no doubt memorializes the Tribe's commitment to adhere to the contract's dispute resolution regime.  That regime has a real

---

*States*, 885 F.2d 627, 629 (9th Cir.1989)).

[96] Docket 6 at 14.

[97] *See Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 86–87 (2d Cir. 2001) (noting similarities between principles governing waivers of state and tribal immunity); *cf. C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 421 n.4 (2001) (reserving decision on "whether *parallel* principles govern *state* and tribal waivers of immunity").

[98] Docket 29 at 14; *see* Docket 1 at 5, ¶ 26.

[99] 532 U.S. 411, 423 (2001).  In an earlier decision, the Ninth Circuit had held that a tribe did not effect a waiver of its tribal sovereign immunity by entering into an arbitration clause.  *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 (9th Cir. 1989).

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 18 of 24

world objective; it is not designed for regulation of a game lacking practical consequences. And to the real world end, the contract specifically authorizes judicial enforcement of the resolution arrived at through arbitration.[100]

While the opinion addressed only the effects of an arbitration clause, the *C & L Enterprises, Inc.* court's reasoning would also seem to apply to a forum selection clause.

Even assuming, however, that a forum selection clause may in some circumstances constitute a waiver of a tribe's sovereign immunity, there is no indication here that Newtok agreed to a forum selection clause that "manifest[ed] the tribe's intent to surrender immunity in 'clear' and unmistakable terms."[101]  The clause was included in the proposed Transportation Agreement that Alaska Logistics submitted with its bids.[102]  In relevant part, the clause states that "[a]ny action brought by either party to enforce any term or provision of this contract shall be commenced in the United States District Court for the Western District of Washington at Seattle, as appropriate."[103]  Elsewhere, however, the proposed Transportation Agreement is characterized as an agreement "by and between Alaska Logistics, LLC . . . ("Carrier"), and Goldstream Engineering, acting for the

---

[100] *C & L Enterprises, Inc.*, 532 U.S. at 422 (citing *Native Vill. of Eyak v. GC Contractors*, 658 P.2d 756, 760 (Alaska 1983); *Val/Del, Inc. v. Superior Court In & For Pima Cty.*, 703 P.2d 502, 509 (Ariz. Ct. App. 1985); *Rosebud Sioux Tribe v. Val-U Const. Co. of S. Dakota*, 50 F.3d 560, 562 (8th Cir. 1995)).

[101] *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016) (citing *C & L Enterprises*, 532 U.S. at 418).

[102] Docket 1-3 at 10–13.

[103] Docket 1-3 at 11.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 19 of 24

Newtok Village Council . . . ("Shipper")."[104]   The last page of the proposed

Transportation Agreement includes signature lines with space for two signatories:

Alaska Logistics, identified as the "Carrier," and "Goldstream Engineering for

[Newtok Village Council]," identified as the "Shipper."[105]   Even if the proposed

Transportation Agreement were binding on Goldstream, reading the proposed

Transportation Agreement as a whole, it is not apparent that the forum selection

clause would be binding on Newtok.    While the document characterizes

Goldstream as "acting for the Newtok Village Council," the forum selection clause's

reference to "either party" suggests that the clause binds *only* the two parties to

the agreement — which are identified elsewhere as "Carrier" Alaska Logistics and

"Shipper" Goldstream.   There is no indication that Newtok itself was a "party" to

the proposed Transportation Agreement; unlike the agreement at issue in *C & L*

*Enterprises, Inc.*, the proposed Transportation Agreement does not appear to have

been signed by the tribe.[106]   Accordingly, the clause does not constitute an

"unmistakable" manifestation of Newtok's intent to waive its sovereign immunity.[107]

### C.    Jurisdictional Discovery

In the alternative, Alaska Logistics contends that it should be permitted to

---

[104] Docket 1-3 at 10.

[105] Docket 1-3 at 13.

[106] *C & L Enterprises, Inc.*, 532 U.S. at 423.  The record does not contain a signed copy of the proposed Transportation Agreement.  At oral argument, Alaska Logistics indicated that it was not asserting that the proposed Transportation Agreement had been signed.

[107] *Bodi*, 832 F.3d at 1016.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 20 of 24

take jurisdictional discovery on the sovereign immunity issue.[108]  Alaska Logistics

contends that the Mertarvik construction project "has spanned for over a decade

and has involved dozens of state and federal agencies as well as numerous private

contractors," and that "Newtok has routinely waived its sovereign immunity, by

contract, to qualify for government grants or enter into agreements with various

contractors" as part of the project.[109]  Accordingly, Alaska Logistics contends that

it "has a reasonable basis to believe that Newtok has waived its sovereign

immunity in other contracts or grant applications with government agencies and

private contractors, and that some of those waivers may extend to Alaska

Logistics['] claims and counterclaims to counterclaims."[110]

Alaska Logistics does not point to any "pertinent facts bearing on the

question of jurisdiction [that] are in dispute."[111]  Instead, it contends that Newtok

may have entered into a contract with another entity in which it waived its sovereign

immunity as to a broad range of claims that might extend to Newtok's claims.  To

support this contention, Alaska Logistics cites contracts between Newtok and two

other entities involved with the Mertarvik construction project.[112]  However, both

contracts waive sovereign immunity only as to disputes between the contracting

---

[108] Docket 29 at 15.

[109] Docket 29 at 16–17.

[110] Docket 29 at 17.

[111] *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).

[112] Docket 29 at 17; *see* Docket 30-1.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 21 of 24

parties, and only as to disputes related to the contracts in question.[113]  While it is possible that Newtok has effected a broad waiver of sovereign immunity in relation to the Mertarvik construction project, Alaska Logistics' request for jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts."[114]   Accordingly, Alaska Logistics will not be permitted to take jurisdictional discovery on the sovereign immunity issue.

### 2. Alaska Logistics' "Counterclaims to Counterclaims" are Redundant.

Newtok asks the Court to strike Alaska Logistics' "Amended Answer to Newtok's Counterclaims and Plaintiff's Counterclaims to Counterclaims."[115] Newtok contends that "the Federal Civil Rules do not contemplate any pleading that might be styled as a 'counterclaim to a counterclaim.'"[116]   Newtok further contends that "the Court should strike the pleading because it is largely redundant as to [Alaska Logistics'] original complaint."[117]  In response, Alaska Logistics cites several cases in which courts have held that "counterclaims to counterclaims" are permissible under the Federal Rules of Civil Procedure.[118]   However, Alaska Logistics does not address Newtok's contention that the pleading is redundant.

---

[113] Docket 30-1 at 7, 11.

[114] *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

[115] Docket 28 at 1 (emphasis omitted).

[116] Docket 28 at 1.

[117] Docket 28 at 2.

[118] Docket 29 at 18–19.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 22 of 24

Because the Court concludes that Alaska Logistics' pleading should be stricken pursuant to Federal Rule of Civil Procedure 12(f), the Court assumes without deciding that "counterclaims to counterclaims" are permissible under the Federal Rules of Civil Procedure.

Pursuant to Rule 12(f), a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A claim is redundant if it repeats another claim in the complaint.[119] "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action."[120] Here, Alaska Logistics' "claims and counterclaims" consist of claims and allegations that are almost identical to those in its Complaint.[121] This portion of Alaska Logistics' pleading is redundant under Rule 12(f). The inclusion of counterclaims in Alaska Logistics' amended answer that are identical to Alaska Logistics' original claims would unnecessarily complicate this proceeding and would prejudice Newtok.[122] Accordingly, Newtok's Motion to Strike will be granted as to the redundant portions of the pleading at Docket 25.[123]

---

[119] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *see also DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1134 (N.D. Cal. 2010) (characterizing as redundant claim that "marshals no new factual allegations nor any new legal theories upon which [Plaintiff] could obtain relief"); 2 J. MOORE, FEDERAL PRACTICE § 12.37[3] (2018) ("[G]enerally, courts will strike a claim as 'redundant' when it essentially repeats another claim in the same complaint.").

[120] *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (quoting *Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116, 121 n.4 (D.P.R. 1972)).

[121] *Compare* Docket 1 at 1–13, ¶¶ 1–72, *with* Docket 25 at 4–16, ¶¶ 1–72.

[122] *See Alco Pac.*, 217 F. Supp. 2d at 1033 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

[123] Newtok asks the Court to award attorney's fees because "[t]he 'counterclaim to a

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 23 of 24

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Newtok Village's Motion to Dismiss at Docket 18 is GRANTED. IT IS FURTHER ORDERED that Newtok Village's Motion to Strike Answer to Counterclaim at Docket 27 is GRANTED as to Alaska Logistics' "counterclaims to counterclaims."[124]

In light of the foregoing, the parties shall each file a status report as to the procedural posture of this case within 14 days of the date of this order.

DATED this 11th day of January, 2019 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

counterclaim' is a frivolous filing under [the] Federal Civil Rules." Docket 28 at 3. However, several federal courts have concluded that a counterclaim may be asserted in reply to a counterclaim. *See* Docket 29 at 18–19 (listing cases). Accordingly, Newtok's request for attorney's fees will be denied.

While Alaska Logistics may not assert "counterclaims to counterclaims" that are identical to its claims, Newtok conceded at oral argument that if Newtok elects to pursue its counterclaims, Alaska Logistics will be entitled to pursue recoupment. *See Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1100 (9th Cir. 2017).

[124] Specifically, the Court orders stricken the portion of Docket 25 that begins at Page 4, Line 20, and ends at Page 16, Line 11.

Case No. 3:18-cv-00108-SLG, *Alaska Logistics, LLC v. Newtok Village Council, et al.*
Order re Motion to Dismiss and Motion to Strike
Page 24 of 24